JUDGE DAVID BRIONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED
2022 APR 18  AM 9:33
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
         DEPUTY

| | |
|---|---|
| **ERIK SALAIZ,** | § § § |
| Plaintiff, | § § |
| v. | § § |
| **EQUISOLAR, INC.,** a California Corporation and **JOHN DOES 1-4** | § § § § |
| Defendants. | § § § |

EP22CV0130

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. Plaintiff ERIK SALAIZ ("Plaintiff") is a natural person and is a citizen of the Western District of Texas and was present in the Western District of Texas during all calls at issue in this case.

2. Defendant EQUISOLAR, INC., ("Equisolar") is a corporation organized and existing under the laws of California with it's principle address at 16530 Ventura Boulevard, Suite 104, Encino, California 91436 and can be served via registered agent Registered Agents Inc., at 5900 Balcones Drive, Suite 100 Austin, Texas 78731.

3. Defendant JOHN DOE 1 is an unknown entity that solicits solar panel systems on behalf of Defendant Equisolar and will be revealed during discovery.

### NATURE OF ACTION

1

4. Plaintiff brings this Complaint and Demand for Jury Trial against Defendants to stop placing unauthorized calls to Plaintiff's personal cell phone and to obtain redress as authorized by statute.

5. Defendant Equisolar offers solar panel systems. As part of marketing their services, Defendant and their agents placed illegal robocalls to Plaintiff's cell phone that used an automatic telephone dialing system ("ATDS").

6. Defendant Equisolar makes unsolicited and unauthorized phone calls to thousands of consumers en mass using an ATDS.

7. Defendant Equisolar did not obtain express written consent from Plaintiff prior to calling his cell phone, and Defendant is therefore liable under the Telephone Consumer Protection Act 47 U.S.C. § 227 (the "TCPA") and its implementing regulation, 47 C.F.R. § 64.1200(a)(2).

8. Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

9. The TCPA targets unauthorized calls exactly like the ones alleged in this case, based on Defendants use of technological equipment to spam consumers on a grand scale without their consent.

10. By placing the calls at issue, Defendant Equisolar has violated the statutory rights and privacy of Plaintiff and caused him to suffer damages that are recognized by statute.

11. Plaintiff therefore seeks an injunction requiring Defendant Equisolar to stop calling his personal cell phone, as well as an award of actual and statutory damages, civil penalties, costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

12. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

13. This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

14. This Court has personal jurisdiction over Defendant because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

15. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendants regularly conducts business in the state of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

16. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these

calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

17. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

18. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

19. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

20. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

21. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

22. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

23. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

24. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

25. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

26. The FCC confirmed this principle in 2013, when it explained that "a seller ...may be

held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

27. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

28. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

29. Plaintiff's personal cell phone (915) 490-0898 has been on the National-Do-Not-Call-Registry since August 2021.

30. Defendant Equisolar offers solar panel systems to consumers.

31. Defendant Equisolar approves of the contracts with the telemarketers who make illegal robocalls to thousands of consumers cellular and residential phone numbers using an ATDS.

32. Defendant Equisolar authorizes the payments to the telemarketers.

33. Defendant Equisolar pays the telemarketers out of bank accounts they own and control.

34. Defendants Equisolar provides instruction and guidance on who to solicit and the minimum qualifications of potential clients.

35. Defendant Equisolar has the authority to stop the illegal robocalls however has refused to do so because it benefits Defendant Equisolar financially when consumers purchase their solar panel systems.

36. Each and every telemarketer that called Plaintiff to his personal cell phone (915) 490-0898 on behalf of or from Defendant Equisolar did not have Plaintiff's prior express written consent before calling.

37. Plaintiff received at least seven unauthorized phone calls to his personal cell phone (915) 490-0898 from or on behalf of Defendant Equisolar within a seven-day period.

38. Each and every phone call Plaintiff received on behalf of or from Defendant Equisolar had a 3-4 second delay before connecting Plaintiff to a live representative indicating the phone calls were made using an ATDS.

39. Defendant Equisolar has been sued for TCPA violations (case#2:21-cv-09706-DMG-KS) and continue to authorize unauthorized phone calls to thousands of consumers en mass by using at ATDS because it benefits Defendant Equisolar financially when consumers purchase their solar panel systems.

40. On March 7, 2022 at 4:54PM Plaintiff received a phone call to his personal cell phone (915) 490-0898 from Defendant Equisolar from phone number (915) 277-4760.

41. Plaintiff answered and was connected to a Spanish speaking telemarketer named Esteban that said he was calling from green energy.

42. Esteban did not ask for Plaintiff and did not know Plaintiff's name prior to the call indicating the phone call was made using an ATDS.

43. Esteban advised Plaintiff the reason for his call was because they were going to be in Plaintiff's area giving providing free appointments to discuss how they can help reduce his electric bill by installing solar panel systems.

44. Esteban then asked Plaintiff qualifying questions and solicited Plaintiff for solar panel systems on behalf of Defendant Equisolar.

45. Plaintiff agreed to have a free estimate for the sole purposes of identifying the company responsible for the unauthorized phone calls.

46. Esteban advised Plaintiff someone from his confirmation team will be calling him to confirm his appointment.

47. On March 7, 2022 at 6:43PM Plaintiff received a phone call to his personal cell phone (915) 490-0898 from Defendant Equisolar from phone number (972) 588-4480.

48. Plaintiff answered and was connected to a female telemarketer named Jadiera that stated she was calling from green energy the solar panel company to confirm his appointment.

49. Plaintiff asked who their company was and Jadiera stated

    "we call ourselves green energy but globally our real name is Equisolar"

50. Jadiera confirmed she was calling on behalf of Defedant Equisolar and provided Plaintiff with their website https://equisolar.com.

51. The female representative confirmed that Defendant Equisolar headquarters is based out of Encino, California.

52. Defendant Equisolar trains their telemarketers and agents not to reveal their true name until a consumer purchases one of their solar panel systems in order to hide their true identity. This is done with intent to duck liability under the TCPA and make it harder for

individuals such as Plaintiff to identify Defendant's calls in order to hold them accountable for their TCPA-violative conduct.

53. On March 8, 2022 at 2:50PM Plaintiff received a phone call to his personal cell phone (915) 490-0898 from Jadiera from phone number (972) 588-4480.

54. Jadiera advised Plaintiff that they had to reschedule his appointment. Plaintiff advised Jadiera that he will call her back to reschedule.

55. Plaintiff received multiple phone calls from a representative named Pearlette calling on behalf of Defendant Equisolar to reschedule his appointment after Plaintiff specifically advised Jadiera that he would call them back to reschedule.

56. Plaintiff advised Pearlette each time that they didn't have to keep calling him and that he would call them back.

57. Plaintiff did not give his express written consent to receive any follow up calls from any representative or telemarketer calling from or on behalf of Defendant Equisolar.

58. Table A displays the calls made by the Defendants

| Date | Time | Caller ID |
|---|---|---|
| 3/7/2022 | 4:54PM | 915-277-4760 |
| 3/7/2022 | 6:43PM | 972-588-4480 |
| 3/8/2022 | 3:30PM | 737-260-3971 |
| 3/10/2022 | 11:44AM | 726-610-3279 |
| 3/10/2022 | 1:54PM | 726-610-3279 |
| 3/14/2022 | 10:02AM | 726-610-3279 |
| 3/14/2022 | 11:27AM | 786-687-4648 |

59.

60. Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

61. The unauthorized phone calls made on behalf of Defendant Equisolar to Plaintiff's personal cell phone (915) 490-0898 were made using an ATDS that has the capacity to store and produce telephone numbers using a random or sequential number generator.

62. Defendant Equisolar is not registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitations. The https://direct.sos.state.tx.us/telephonesearch.asp site ("Texas Registration Database") does not contain Defendant Equisolar's registration.

63. Defendant Equisolar does not qualify for an exemption under § 302.053.

64. On April 15, 2022, Plaintiff sent an internal do-not-call policy request via e-mail to info@equisolar.com.

65. Defendant Equisolar never sent Mr. Salaiz a do-not-call policy.

66. On information and belief, the Defendant Equisolar did not have a written do-not-call policy while it was sending Mr. Salaiz the unsolicited calls.

67. On information and belief, the Defendant Equisolar did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

68. Defendant Equisolar participated in, facilitated, directed, authorized, knew of or willfully ignored the false and misleading sales practices and unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

69. Defendant Equisolar refuse to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendant Equisolar financially,

70. Plaintiff never consented to receive the calls alleged herein. Plaintiff had no relationship with Defendant Equisolar prior to the calls alleged herein.

## VICARIOUS LIABILITY

71. Defendant Equisolar is vicariously liable under the theories of implied authority, apparent authority, and ratification, and as well as liable because any other result would impair the underlying purpose of the TCPA.

72. "A[n] entity may be held vicariously liable for violations of the TCPA 'under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification.'" *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 831 (N.D. Ill. 2016) (Quoting In re Joint Petition filed by Dish Network, LLC, 28 F.C.C. R. 6574, 6582 ¶ 28 (2013)). "Formal Agency" in this context means actual authority, which may be express or implied. Id,.

73. Defendant Equisolar gave express authority, apparent authority, and have ratified the conduct and behavior of the telemarketers by signing contracts to hire them to administer sales and the solicitation of sales of their solar panel systems with the full knowledge and expectation Defendant Equisolar would violate the TCPA.

74. Defendant Equisolar refuses to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendant Equisolar financially when consumers purchase their solar panel systems.

## The Texas Business and Commerce Code 305.053

75. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

76. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or

subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

### Violations of the Texas Business and Commerce Code § 302.101

77. The actions of the defendant violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

78. Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

79. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

80. Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

81. Under Texas Business and Commerce Code § 302.302, Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

### The Plaintiff's cell phone is a residential number

82. The calls were to the Plaintiff's cellular phone (915) 490-0898 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff

maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phone to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, timing food when cooking, sending and receiving emails, watching movies, listening to music and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and is not used for any business purposes.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

83. Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing robocalls.

84. Defendant's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

85. Plaintiff has been annoyed, harassed, and irritated by robocalls placed by the Defendants and other similar companies.

86. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to the Plaintiff.

## FIRST CAUSE OF ACTION

**Willful and/or Knowing Violation of 47 U.S.C. § 227**
**Telephone Consumer Protection Act of 1991**
**(Against all Defendants)**

87. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

88. Defendant Palmetto and/or their agents placed calls to Plaintiff's cellular telephone.

89. Plaintiff never consented to receive calls from Defendant Equisolar.

90. Plaintiff has no relationship with Defendant Equisolar.

91. Defendant's calls were made for purposes of advertising and marketing Defendant Equisolar's solar panel systems. These calls constituted commercial advertising and telemarketing as contemplated by the TCPA.

92. The calls were made using an ATDS to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

93. As a result of their unlawful conduct, Defendant repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendant Equisolar to stop their unlawful calling campaigns.

94. Not only did Defendant Equisolar make these violating calls, Defendant Equisolar and/or their agents did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

95. If the Court finds that Defendant Equisolar willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

96. As a result of Defendant's violations of 47 U.S.C. 227(b)(1)(A)(iii), Plaintiff seeks for himself statutory damages in the minimum amount of $500.00 per call, or $1,500.00 per call if the Court determines Defendant's violations were "knowing and/or willful" pursuant to 47 U.S.C. § 227(b)(3)(C).

87. Plaintiff further seeks injunctive relief ordering Defendant to cease calling Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A).

## SECOND CAUSE OF ACTION

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 C.F.R. § 64.1200(C))

### (Against All Defendants)

88. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

89. The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

90. Defendant Equisolar called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

91. Plaintiff was statutorily damaged at least six (7) times under 47 U.S.C. § 227(c)(3)(F) by the Defendant by the telephone calls described above, in the amount of $500 per call.

92. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

93. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## THIRD CAUSE OF ACTION
### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)
### (Against All Defendants)

94. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

95. The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

   a. written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1)[2];

   b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

   c. in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

96. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

97. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## FOURTH CAUSE OF ACTION
### Violations of The Texas Business and Commerce Code 305.053

98. Plaintiff incorporates the foregoing allegations as if set forth herein.

99. The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053,** by making non-emergency telemarketing robocalls to Mr. Salaiz's cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

100. Plaintiff is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

101. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c)**

### FIFTH CAUSE OF ACTION

### (Violations of The Texas Business and Commerce Code 302.101)

102. Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

103. The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

104. Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302(a)**.

105. Plaintiff is entitled to recover all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees. **Texas Business and Commerce Code 302.302(d).**

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C. An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for seven calls.

E. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F. An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G. An award to Mr. Salaiz of damages, as allowed by law under the TCPA;

H. An award to Mr. Salaiz of interest, costs and attorneys' fees, as allowed by law and equity

I. Such further relief as the Court deems necessary, just, and proper.

### JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

April 18, 2022                    Respectfully Submitted,

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-490-0898
Salaiz.ep@gmail.com